# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR THE HARBORVIEW MORTGAGE LOAN TRUST 2006-5,

           Plaintiff,

vs.

ISLA AT SOUTH SHORES HOMEOWNERS ASSOCIATION,

           Defendant.

Case No.: 2:16-cv-02275-GMN-GWF

**ORDER**

Pending before the Court is the Motion to Dismiss, or in the alternative, Motion for Summary Judgment, (ECF No. 26), filed by Defendant Isla at South Shores Homeowners Association ("HOA"). Plaintiff Deutsche Bank National Trust Company ("Plaintiff") filed a Response, (ECF No. 35), and HOA filed a Reply, (ECF No. 38).

Also pending before the Court is the Motion for Summary Judgment, (ECF No. 30), filed by Plaintiff. HOA filed a Response, (ECF No. 34), and Plaintiff filed a Reply, (ECF No. 39).

For the reasons discussed herein, HOA's Motion to Dismiss is **DENIED** and Plaintiff's Motion for Summary Judgment is **GRANTED.**

## I. <u>BACKGROUND</u>

This case arises from the non-judicial foreclosure on real property located at 2101 Sealion Drive, Apt. 104, Las Vegas, Nevada 89128 (the "Property"). (Compl. ¶ 9, ECF No. 1). On May 1, 2006, non-party Ireneo Coyco ("Borrower") obtained a loan in the amount of $129,500, secured by a deed of trust ("DOT") recorded on May 15, 2006. (*See* Deed of Trust, Ex. A to Pl.'s Mot. Summ. J. ("Pl.'s MSJ"), ECF No. 30-1). Plaintiff became beneficiary under

the DOT by way of an assignment recorded on November 9, 2010. (*See* Assignment, Ex. B to Pl.'s MSJ, ECF No. 30-2).

Upon Borrower's failure to pay all amounts due, HOA, through its agent Red Rock Financial Services, LLC ("Red Rock"), recorded a notice of delinquent assessment lien on July 14, 2010, indicating that HOA was due $3,046.13 inclusive of assessments, late fees, interest, collection fees, and costs. (*See* Notice of Delinquent Assessment, Ex. C to Pl.'s MSJ, ECF No. 30-3). On February 27, 2012, Red Rock, on behalf of HOA, recorded a notice of default and election to sell. (*See* Notice of Default, Ex. D to Pl.'s MSJ, ECF No. 30-4). The notice stated that HOA was owed $6,132.55 but did not state whether it included dues, interest, fees, or collection costs in addition to assessments. (*Id.*).

Plaintiff wrote a letter to Red Rock requesting the superpriority amount of HOA's lien on April 9, 2012. (*See* Accounting Requests, Exs. F, G to Pl.'s MSJ, ECF Nos. 30-6, 30-7). Red Rock responded with a statement of account identifying $18,602.28 as the amount due, but did not specify the superpriority amount owed. (*See* Red Rock Letter, Ex. H to Pl.'s MSJ, ECF No. 30-8). Based upon the monthly common assessments of $185.00, Plaintiff attempted to tender nine months of assessments totaling $1,665.00 on May 3, 2012. (*See* Tender Letter, Ex. I to Pl.'s MSJ, ECF No. 30-9). Red Rock, on behalf of HOA, responded with a letter stating HOA was authorized to pursue a non-judicial foreclosure. (*See* Red Rock Letter, Ex. J to Pl.'s MSJ, ECF No. 30-10).

On November 24, 2015, Red Rock, on behalf of HOA, recorded a notice of foreclosure sale, setting a sale date for December 29, 2015, and providing that $49,814.54 was due HOA, which included the total amount of the unpaid balance, as well as costs, expenses, and advances. (*See* Notice of Foreclosure Sale, Ex. E to Pl.'s MSJ, ECF No. 30-5). On December 29, 2015, HOA foreclosed on the Property after which HOA purchased the Property for $50,519.54. (*See* Foreclosure Deed, Ex. K to Pl.'s MSJ, ECF No. 30-11).

On September 28, 2016, Plaintiff filed its Complaint asserting the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title; (2) breach of NRS 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*See* Compl. ¶¶ 29–74).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of

"matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**B. Rule 56(a)**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

HOA moves for summary judgment on the basis that Plaintiff failed to mediate its claims pursuant to NRS 38.310.[1] (HOA's MTD 13:7–16:9, ECF No. 26). HOA further argues that Plaintiff's claim for breach of NRS 116.1113 fails because there is no contract or duty between the parties that would create liability on HOA's behalf. (*Id.* 16:12–19:20). Additionally, HOA asserts that Plaintiff's quiet title claim fails on the facts because Plaintiff was given adequate notice and failed to properly tender the superpriority amount of HOA's lien. (*Id.* 19:23–30:6).

Plaintiff moves for summary judgment on the basis that the Ninth Circuit's holding in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), cert. denied, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017), compels the Court to find that its DOT survived the HOA foreclosure sale. (Pl.'s MSJ 6:12–11:21, ECF No. 30). Plaintiff further argues that its tender of the HOA superpriority lien preserved its status as holder of the first DOT. (*Id.* 11:23–16:15). Additionally, Plaintiff contends it is entitled to summary judgment because HOA's foreclosure sale was commercially unreasonable. (*Id.* 18:1–20:13).

---

[1] Subsequent to HOA's Motion, Plaintiff filed a Notice of Completion of NRED Mediation, (ECF No. 33). In any event, as discussed *supra*, the Court grants Plaintiff relief in the form of quieting title in its favor, which is exempt from NRS 38.310's mediation requirements. *See McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013).

The Court first turns to the parties' arguments concerning the applicability of *Bourne Valley* to the instant case.[2]

### A. Constitutionality of the Foreclosure

In *Bourne Valley*, the Ninth Circuit held that NRS § 116.3116's "'opt-in' notice scheme, which required a homeowners' association to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated the lender's constitutional due process rights under the Fourteenth Amendment to the Federal Constitution." *Bourne Valley*, 832 F.3d at 1156. Specifically, the Court of Appeals found that by enacting the statute, the Nevada legislature acted to adversely affect the property interests of mortgage lenders and was thus required to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1159. The statute's opt-in notice provisions therefore violated the Fourteenth Amendment's Due Process Clause because they impermissibly "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Id.*

In holding that NRS § 116.3116's opt-in notice scheme is facially unconstitutional, the Ninth Circuit rejected the appellant's argument that NRS § 107.090 should be read into NRS § 116.31168(1) to cure the constitutional deficiency. *Id.* Specifically, the appellant argued that the "incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request." *Id.* The Ninth Circuit, interpreting Nevada law, held that this interpretation "would impermissibly render the express notice provisions of Chapter 116 entirely superfluous." *Id.*

---

[2] In light of the Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018), the Court ordered the parties to file supplemental briefs addressing the interplay between that decision and *Bourne Valley*, (ECF No. 42). HOA and Plaintiff timely filed their respective briefs, (ECF Nos. 43, 44).

Subsequent to *Bourne Valley*, a court in this District certified the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 required a homeowner's association to provide notices of default and/or sale to persons or entities holding a subordinate interest even when such persons or entities did not request notice, prior to the amendment that took effect on October 1, 2015." *Bank of New York Mellon v. Star Hill Homeowners Ass'n*, No. 2:16-cv-02561-RFB-PAL, 2017 WL 1439671, at *5 (D. Nev. Apr. 21, 2017). On August 2, 2018, the Nevada Supreme Court issued its decision on the certified question in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018). The Nevada Supreme Court explicitly "decline[d] to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159," and concluded that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 . . . ." *Id.* at 1253. Therefore, "before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Id.*

"[A] State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation."). Federal courts are bound by its respective circuit courts' interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the federal] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Togill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017) (holding that the Fourth Circuit was bound by the Supreme Court of Virginia's limiting construction of a statute that was previously found to be facially unconstitutional by a federal court). Such rulings may only be reexamined when the "reasoning or theory" of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority. *Rodriguez v. AT&T*

*Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). In determining whether intervening higher authority is "clearly irreconcilable," courts must "look at more than the surface conclusions of the competing authority." *Id.* "Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* (quoting *Gammie*, 335 F.3d at 900).

Here, the Nevada Supreme Court's interpretation of NRS 116.31168's notice provisions is irreconcilable with the Ninth Circuit's prior interpretation. The Ninth Circuit's conclusion that NRS § 116.3116 violated lenders' due process rights was explicitly premised upon the Ninth Circuit's interpretation of state law. Specifically, the Ninth Circuit concluded the notice provisions of NRS 107.090 are not incorporated into NRS 116.31168. However, because the Nevada Supreme Court has since rejected the Ninth Circuit's interpretation by holding that the notice provisions of NRS 107.090 are incorporated into NRS 116.31168, *Bourne Valley* is no longer controlling authority with respect to § 116.3116's notice provisions.

Accordingly, to the extent Plaintiff seeks summary judgment based upon the Ninth Circuit's holding in *Bourne Valley*, the Court rejects this theory. The Court now turns to the parties' remaining arguments.

**B. Plaintiff's Tender of the HOA Superpriority Lien**

Plaintiff asserts that its tender of an amount equivalent to nine months of unpaid assessments satisfied HOA's superpriority lien. (Pl.'s MSJ 12:9–13:26). HOA argues that because Plaintiff's tender did not include health and safety welfare fines arising from water leakage and mold onset, the amount tendered was insufficient. (HOA's MTD 21:27–22:9).

"[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, No. 70501, 2018 WL 4403296, at *1 (Nev. 2018) (en banc).

"[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at *3. In addition to a full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on May 3, 2012, Plaintiff sent Red Rock a tender letter containing a check for $1,665.00. (*See* Tender Letter, Ex. I to Pl.'s MSJ, ECF No. 30-9). This figure represents nine months of unpaid assessments, at a rate of $185.00 per month, as stated in the accounting ledger Red Rock mailed to Plaintiff. (*See* Red Rock Accounting Ledger, Ex. H to Pl.'s MSJ, ECF No. 30-8). The ledger provides that during the relevant nine-month period, nuisance and abatement charges were not assessed. (*See id.*). Accordingly, it follows that Plaintiff tendered the proper amount to discharge HOA's superpriority lien.

HOA does not dispute that the tender amount constituted nine months of delinquent assessments. (*See* HOA's MTD 6:23–24); (*see also* HOA's Resp. 4:22–23, 15:24–16:3, ECF No. 34). Rather, HOA contends that the amount fell short of the superpriority lien because it did not factor in maintenance and nuisance abatement costs totaling $14,253.12. (*Id.* 16:4–8, 18:15–21). In support, HOA puts forth an accounting chart with an itemized breakdown of costs arising from water damage to the Property. (*See* HOA Assessment & Expenses Chart, Ex. 6 to HOA's MTD, ECF No. 29-6).

HOA's expenses chart, however, establishes that all water damage assessments and associated charges postdated HOA's notice of delinquent assessments. (*Id.*). Indeed, HOA acknowledges this in its Response. (*See* HOA's Resp. 18:16–21, ECF No. 34) ("Even if the HOA had accepted the payment . . . . It *subsequently* incurred pre-foreclosure nuisance and abatement costs . . . .") (emphasis added); *(see also id.* 2:21–22). Because an HOA's notice of delinquent assessments is the relevant date for calculation of the superpriority amount, these costs would not factor into HOA's superpriority lien absent a renewed notice of delinquent

assessments. *See Prop. Plus Invs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 401 P.3d 728, 731 (Nev. 2017).

HOA suggests that its November 2015 notice of trustee's sale triggered a new superpriority lien. (HOA's Resp. 5:10–6:3, 18:16–21). However, neither the pre-2015 version of NRS 116, nor the current version, provide that a notice of foreclosure sale gives rise to a new superpriority lien. *See* NRS 116.3116 (stating a "lien under this section is prior to all security interests to the extent of . . . unpaid assessments . . . which would have become due in the absence of acceleration during the 9 months immediately preceding the date on which the notice of default and election to sell is recorded."); *see also Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank, N.A.*, 388 P.3d 226, 231 (Nev. 2017) (recognizing under the pre-2015 version of NRS 116.3116 that serving a notice of delinquent assessments constitutes institution of an action to enforce the lien). Therefore, without a new notice of delinquent assessments, or a post-October 2015 notice of default and election to sell, HOA's superpriority amount remained tethered to its initial institution of foreclosure proceedings. Accordingly, because HOA did not initiate subsequent foreclosure proceedings pursuant to either of these avenues, Plaintiff tendered the correct superpriority amount as measured from HOA's notice of delinquent assessments.

The Court now considers whether the tender was either unconditional or with conditions on which Plaintiff had the right to insist.

Plaintiff's tender language, in relevant part, provides:

> Our client has authorized us to make payment to you in the amount of $1,665.00 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a maximum 9 months worth of delinquent assessments recoverable by an HOA. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts state herein and express agreement that [Plaintiff's]

> financial obligations towards the HOA in regard to the real property
> located at 2101 Sealion Drive #104 have now been "paid in full."

(*See* Tender Letter, Ex. I to Pl.'s MSJ, ECF No. 30-9).

The Court is satisfied that this language constitutes a valid tender. To the extent it contains conditions, they are conditions on which Plaintiff had a right to insist. The Court reaches this conclusion based upon the Nevada Supreme Court's holding in *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, No. 70501, 2018 WL 4403296 (Nev. 2018) (en banc). There the court considered virtually identical language[3] and found the tender was both unconditional and otherwise valid. *Id.* at *2–3.

Based on the foregoing, the Court holds that Plaintiff's tender provided the proper amount due under HOA's superpriority lien and the letter's language was unconditional and valid. Therefore, the tender preserved Plaintiff's status as holder of the senior DOT, and the DOT continues to encumber the Property. Accordingly, Plaintiff's Motion for Summary Judgment on its quiet title claim is hereby granted.

**C. Plaintiff's Remaining Claims for Violation of NRS § 116.1113, Wrongful Foreclosure, and Injunctive Relief**

In its prayer for relief, Plaintiff requests primarily an "order declaring that [HOA] purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 13:5–6). The other relief requested—with the exception of injunctive relief—is phrased in the alternative. (*See id.* 13:7–14:7). Therefore, because the Court grants summary judgment for Plaintiff on its

---

[3] The tender letter before the Nevada Supreme Court contained the following paragraph:
> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 2018 WL 4403296, at *2.

quiet title claim, Plaintiff has received the relief it requested. Accordingly, the Court dismisses Plaintiff's second and third causes of action as moot.

With regard to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim, and it is therefore dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 30), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that HOA's Motion to Dismiss, or in the alternative, Motion for Summary Judgment, (ECF No. 26), is **DENIED**.

The Clerk of the Court is instructed to close the case and enter judgment accordingly.

**DATED** this __28__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge